IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK



| | |
|---|---|
| LEXOS MEDIA, INC., | §<br>§<br>§ |
| Plaintiff, | §<br>§ |
| v. | § CIVIL ACTION NO. 12-cv-7994-PGG<br>§<br>§ |
| ZYNGA, INC., | §<br>§ JURY TRIAL DEMANDED |
| Defendant. | §<br>§<br>§ |

## AMENDED COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff, LEXOS MEDIA, INC., sues Defendant, ZYNGA, INC., for patent infringement and alleges as follows:

1. This is an action arising under the patent laws of the United States for infringement of United States Patent Nos. 5,995,102 ("the '102 Patent"), 6,065,057 ("the '057 Patent"), 6,118,449 ("the '449 Patent"), 7,111,254 ("the '254 Patent"), and 7,975,241 ("the '241 Patent") (collectively, "the patents-in-suit").

### PARTIES

2. Plaintiff, LEXOS MEDIA, INC. ("Lexos"), is a Delaware corporation authorized to conduct business in Florida and conducting business from its principal

place of business in Fort Myers, Florida. Lexos develops software solutions to facilitate cursor-based advertising and is a leader in this technology field.

3. Defendant, ZYNGA, INC., is a Delaware corporation with its principal place of business in San Francisco, California. Zynga makes, markets, sells and/or offers for sale games throughout the United States, including in the Southern District of New York, that include cursor-based advertising and the sale of virtual goods, including through cursor modification. Zynga derives the majority of its revenue from these activities.

4. Zynga is designing, marketing, making, using, making available for use, selling, importing, and/or offering for sale online games including but not limited to Zynga's CastleVille, Café World, Chef Ville, CityVille, CityVille 2, Empires & Allies, FarmVille, FarmVille 2, FishVille, Hidden Chronicles, Indiana Jones Adventure World, Mafia Wars 2, The Pioneer Trail (f/k/a FrontierVille), The Ville, Treasure Isle, and YoVille products ("Zynga's cursor modification games"), and selling and offering for sale virtual goods online within those games, including the sale of virtual goods through cursor modification. Zynga's cursor modification games infringe claims from the patents-at-issue.

## JURISDICTION AND VENUE

5. This is a civil action for patent infringement arising under the patent laws of the United States, Title 35, United States Code, including 35 U.S.C. §§ 271 and 281-285. Jurisdiction is conferred on this Court pursuant to 28 U.S.C. §§ 1331 and 1338(a).

6. Venue is proper in the Southern District of New York pursuant to 28 U.S.C. § 1391 and 28 U.S.C. § 1400(b).

7. This Court has personal jurisdiction over Zynga as Zynga has conducted and continues to conduct business within the State of New York. Zynga designs, makes, markets, uses, sells and/or offers for sale games, including Zynga's cursor modification games, in the Southern District of New York, and sells and offers for sale virtual goods through its online games in the Southern District of New York. Zynga has committed the tort of patent infringement within the State of New York and, more particularly, within the Southern District of New York.

## GENERAL ALLEGATIONS

8. On November 30, 1999, the U.S. Patent and Trademark Office duly and legally issued U.S. Patent No. 5,995,102 ("the '102 Patent"), entitled "Server System and Method for Modifying a Cursor Image," to James Rosen, Thomas Schmitter, and Mark Hall. Lexos is the owner by assignment of the '102 Patent.

9. On May 16, 2000, the U.S. Patent and Trademark Office duly and legally issued U.S. Patent No. 6,065,057 ("the '057 Patent"), entitled "Method for Authenticating Modification of a Cursor Image" to James Rosen, Thomas Schmitter, and Mark Hall. Lexos is the owner by assignment of the '057 Patent.

10. On September 12, 2000, the U.S. Patent and Trademark Office duly and legally issued U.S. Patent No. 6,118,449 ("the '449 Patent"), entitled "Server System and Method for Modifying a Cursor Image" to James Rosen, Thomas Schmitter, and Mark Hall. Lexos is the owner by assignment of the '449 Patent.

11. On September 19, 2006, the U.S. Patent and Trademark Office duly and legally issued U.S. Patent No. 7,111,254 ("the '254 Patent"), entitled "System for Replacing a Cursor Image in Connection with Displaying the Contents of a Web Page" to James Rosen, Thomas Schmitter, and Mark Hall. Lexos is the owner by assignment of the '254 Patent.

12. On July 5, 2011, the U.S. Patent and Trademark Office duly and legally issued U.S. Patent No. 7,975,241 ("the '241 Patent"), entitled "System for Replacing a Cursor Image in Connection with Displaying the Contents of a Web Page" to James Rosen, Thomas Schmitter, and Mark Hall. Lexos is the owner by assignment of the '241 Patent.

13. Lexos is the owner of all rights, title, and interest in and to the '102 Patent, '057 Patent, '499 Patent, '254 Patent, and '241 Patent. Lexos possesses all rights to sue and recover for past and future infringement.

14. On or about November 16, 2011, Lexos's outside counsel sent a letter to Zynga's general counsel notifying Zynga that Lexos is the owner of the patents-in-suit and that Zynga's games that include cursor-based modification features infringe the patents-in-suit.

15. Each of the patents-in-suit is valid and enforceable.

16. Zynga has infringed, and continues to infringe, directly, contributorily, and/or through the inducement of others, the claimed apparatuses and methods of the patents-in-suit through the cursor modification in the games Zynga makes, uses, sells, and/or offers for sale, including Zynga's cursor modification games.

17.  Lexos has been damaged as a result of Zynga's infringing conduct. Zynga is, therefore, liable to Lexos in an amount that adequately compensates Lexos for Zynga's infringement, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

## COUNT I
### (Infringement of the Patents-in-Suit)

18.  Lexos realleges and incorporates paragraphs 2 through 17 as though fully set forth herein.

19.  Zynga has been and is now directly infringing the patents-in-suit by making, using, selling, and/or offering for sale Zynga game products with cursor modification technologies or features, that practice or embody one or more claims of each of the patents-in-suit. Zynga also has been and is now inducing others, such as end users of such Zynga games, to directly infringe one or more claims of each of the patents-in-suit through use of its games and the cursor modification features that are so pervasive during game use. Cursor modification is critical to game play, user experience, and user retention and is what makes Zynga's games easy to use and "so addictive" in Zynga's own words.

20.  Zynga indirectly infringes the patents-in-suit by inducement of infringement in accordance with 35 U.S.C. § 271(b). Zynga provides Zynga's cursor modification games to end-user customers in the United States who, in turn, load and use the Zynga cursor modification games. Accordingly, Zynga indirectly infringes because Zynga has been and is now actively inducing others, such as end users of Zynga's cursor modification games, to directly infringe one or more claims of each of the patents-in-suit.

21. Zynga's end-user customers directly infringe the patents in suit when they play Zynga's cursor modification games and use the cursor modification features in those games. Zynga's end-user customers who play Zynga's games having the cursor modification features use computer servers, programs, instructions, and/or other resources provided by Zynga to modify cursor images during game play and directly infringe at least one claim of each of the patents-in-suit.

22. Zynga knew of the patents-in-suit at least since on or about November 16, 2011 ("November 2011 Letter"), when Lexos' outside counsel sent a letter to Zynga's general counsel notifying Zynga that Lexos is the owner of the patents-in-suit and that Zynga's games having cursor-based modification features infringe the patents-in-suit.

23. At least as early as the November 2011 Letter, Zynga had knowledge that the cursor-based modification features in its games were inducing users of Zynga's games to infringe the patents-in-suit when using the games, and Zynga specifically intended such users to infringe the patents-in-suit knowing that users of Zynga's games constituted infringement.

24. Thus, Zynga knowingly induced its end-user customers to use the cursor modification features of Zynga's games, thereby infringing the patents-in-suit. Zynga knowingly includes features in its cursor modification games and provisions facilities for their use including computer servers, programs, instructions, and/or other resources that infringe the patents-in-suit.

25. Zynga possessed a specific intent to encourage its end-user customers' infringement of the patents-in-suit. Zynga possessed a specific intent that Zynga's end-

user customers play Zynga's cursor modification games and use the infringing cursor modification features of those games during game play. Zynga specifically intended that the infringing cursor modification features be designed into Zynga's cursor modification games, and Zynga specifically intended to provide the computer servers, programs, instructions, and/or other resources that end-user customers need to play Zynga's cursor modification games and perform the infringing act of using the cursor modification features. Zynga specifically intended that its end-user customers use the prominent features Zynga designed into its cursor modification games, including the infringing cursor modification features.

26. By non-limiting example, Zynga states that with regard to one of its cursor modification games, CoasterVille, "[i]f you're not clear on the goal, hover over the ? or click 'show me'" to receive information about the next steps that should be taken clearly showing a specific intent to encourage its end users to infringe the patents-in-suit. In another example, Zynga states with regard to another cursor modification game, ChefVille, "Hover your cursor over a crew member and their contributions will be displayed" to check information about the contribution of the crew of an end-user. In yet another example, Zynga states with regard to a third cursor modification game, CityVille 2, "When you hover over the Plant, it lets you know it is making your item. When the item you have crafted is ready, hover over the building. It lets you know it is time to collect your item." These examples should be taken as clearly showing a specific intent to encourage its end users to infringe the patents-in suit.

27. Zynga indirectly infringes the patents-in-suit by contributory infringement in accordance with 35 U.S.C. § 271(c). Zynga provides Zynga's cursor modification games to end-user customers in the United States who, in turn, load and use the Zynga cursor modification games. Zynga with full knowledge of the patents-in-suit (at least as early as the November 2011 Letter) provided the cursor modification games to users which have no substantial non-infringing uses.

28. Zynga knowingly includes features in its games and knowingly provides the servers, programs, instructions, and/or resources that end-user customers need to play Zynga's cursor modification games to perform the infringing act. Zynga knows that when it includes prominent features in its games, such as the infringing cursor modification features, Zynga contributorily infringes the patents-in-suit.

29. There are no substantial non-infringing uses of the cursor modification games other than infringing the patents-in-suit as the changing of the cursor by Zynga's games are especially made and especially adapted to be used in a way that infringes.

30. By non-limited example, upon information and belief, Zynga's cursor modification games, CoasterVille, ChefVille, and CityVille 2 display the cursor in a manner which only infringes the patents-in-suit and cannot be used in a manner such that it does not infringe.

31. Zynga's actions are in violation of one or more of the provisions of 35 U.S.C. § 271(a), (b), (c), (f), and/or (g).

32. Zynga's acts have caused, and unless restrained and enjoined, will continue to cause, irreparable injury and damage to Lexos for which there is no adequate

remedy at law. Unless enjoined by this Court, Zynga will continue to infringe the patents-in-suit.

## COUNT II
### (Willful Infringement of the Patents-in-Suit)

33. Lexos incorporates by reference herein the averments set forth in paragraphs 1-30, above.

34. Since at least as early as the November 2011 Letter, Zynga's infringement of the Patents-in-Suit has been and continues to be willful since Zynga had notice of the patents-in-suit and the infringement based on the cursor modification games.

35. Zynga had clear notice of the specific patents-in-suit and the products that infringe those patents at least because of the November 2011 Letter and despite an objectively high likelihood that Zynga's actions constituted infringement of the patents-in-suit (which are presumed valid) continued to offer the cursor modification games.

36. Zynga knew, or should have known, from at least the November 2011 Letter that the cursor modification games infringed the patents-in-suit and, thus, Zynga has willfully infringed the patents-in-suit.

WHEREFORE, Plaintiff, LEXOS MEDIA, INC., demands judgment against ZYNGA, INC., as follows:

a) a judgment that Zynga, and its parents, affiliates, subsidiaries, officers, agents, servants, employees, attorneys, successors, and assigns, and all those persons in active concert or participation with them, or any of them, be enjoined from making, importing, using, offering for sale, selling, or causing to be sold any product or service

falling within the scope of any claim of the patents-in-suit, or otherwise infringing or contributing to or inducing infringement of any claim of the patents-in-suit;

  b)  a judgment that Zynga has directly infringed, and/or indirectly infringed by way of inducement and/or contributory infringement, the patents-in-suit;

  c)  a judgment awarding Lexos its actual damages under 35 U.S.C. § 284, including supplemental damages for any continuing post-verdict infringement until Zynga is enjoined from further infringing activities;

  d)  a judgment that Lexos be awarded enhanced damages pursuant to 35 U.S.C. § 284, including a finding that Zynga's infringement is willful and trebling of the damages award;

  e)  a judgment requiring Zynga to pay Lexos pre-judgment and post-judgment interest on the damages awarded, including an award of pre-judgment interest, pursuant to 35 U.S.C. § 284, from the date of each act of infringement of the patents-in-suit by Zynga to the day a damages judgment is entered, and further award of post-judgment interest, pursuant to 28 U.S.C. § 1961, continuing until such judgment is paid, at the maximum rate allowed by law;

  f)  an Order for an accounting for damages through verdict and thereafter until Zynga is enjoined from further infringing activities;

  g)  a judgment and Order finding this to be an exceptional case and requiring Zynga to pay the costs of this action (including all disbursements), and attorneys' fees as provided by 35 U.S.C. § 285;

- 11 -

      h)      alternatively, that the Court award a compulsory ongoing royalty, in the event that an injunction does not issue; and

      i)      such other and further relief in favor of Lexos as the Court deems just and proper.

## DEMAND FOR A JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Lexos demands a trial by jury on all issues triable of right by a jury.

- 12 -

Dated: January 31, 2013

Respectfully submitted,

**McKOOL SMITH, P.C.**

*Brett E. Cooper /rb*
Robert A. Cote
rcote@mckoolsmith.com
Brett E. Cooper
bcooper@mckoolsmith.com
One Bryant Park, 47th Floor
New York, New York 10036
Telephone: (212) 402-9400
Facsimile: (212) 402-9444

**ATTORNEYS FOR PLAINTIFF
LEXOS MEDIA, INC.**